**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
LISA STUART,                         )
                                     )
              Plaintiff,             )
                                     )
      v.                             )        1:19cv319
                                     )
GEICO GENERAL INSURANCE COMPANY,     )
                                     )
              Defendant.             )
```

### MEMORANDUM OPINION, RECOMMENDATION, AND ORDER
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on "Plaintiff['s] Motion to Remand to State Court" (Docket Entry 14)[1] (the "Remand Motion") and on the "Motion to Dismiss" (Docket Entry 8) (the "Dismissal Motion") filed by GEICO General Insurance Company (the "Defendant"). For the reasons that follow, the Court (I) will deny the Remand Motion[2] and (ii) should deny the Dismissal Motion.

### BACKGROUND

On February 12, 2019, Lisa Stuart (the "Plaintiff") initiated a lawsuit against Defendant in the North Carolina General Court of Justice for Durham County (see Docket Entry 1 at 1; see also Docket

---

1  For legibility reasons, this Opinion uses standardized capitalization in all quotations from the parties' materials.

2  For reasons stated in <u>William E. Smith Trucking, Inc. v. Rush Trucking Centers of North Carolina, Inc.</u>, No. 1:11cv887, 2012 WL 214155, at *2-6 (M.D.N.C. Jan. 24, 2012), the undersigned United States Magistrate Judge opts to enter an order rather than a recommendation regarding remand.

Entry 4 (the "Complaint") at 1)[3] related to the nonpayment of uninsured/underinsured motorist insurance ("UIM") benefits arising from an accident on February 13, 2016 (<u>see, e.g.</u>, Docket Entry 4, ¶¶ 6-11). Asserting the existence of diversity jurisdiction, <u>see</u> 28 U.S.C. § 1332, Defendant timely removed the lawsuit to this Court under 28 U.S.C. §§ 1441 and 1446. (<u>See</u> Docket Entry 1 at 1-4.) Shortly thereafter, Defendant moved to dismiss the lawsuit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), contending "that Plaintiff's Complaint fails to state a claim upon which relief can be granted pursuant to the contract at issue in this matter." (Docket Entry 8 at 1.)

Plaintiff responded by opposing the Dismissal Motion (<u>see</u> Docket Entry 22) and seeking to remand this lawsuit to state court (<u>see</u> Docket Entry 14). In particular, the Remand Motion contends that "a lack of complete diversity of citizenship among the parties exists," on the theory that, "[p]ursuant to 28 U.S.C. § 1332(c)(1)(A)[,] Defendant . . . is deemed to be a citizen of North Carolina, the same state as its insured Plaintiff." (<u>Id.</u> at 3.) Defendant, in turn, opposes the Remand Motion. (<u>See generally</u> Docket Entry 17.)

As relevant to the pending motions, the Complaint alleges the following:

---

3 Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

Plaintiff "is a citizen and resident of Durham County, North Carolina." (Docket Entry 4, ¶ 1.) Defendant "is a foreign corporation, incorporated in the State of Maryland," with "[i]ts primary place of business" also located in Maryland. (Id., ¶ 2.) However, "[t]he events at issue in this lawsuit took place in Durham County, North Carolina." (Id., ¶ 4.) "On or about September 10, 2015 Plaintiff purchased and Defendant issued an automobile liability [insurance] policy to Plaintiff and her ex-husband, which is attached [to the Complaint] as Exhibit 'A.'" (Id., ¶ 6.) This insurance policy provides for UIM benefits "of $100,000.00 per person/$300,000.00 per accident." (Id.)

"Prior to the institution of this action, Plaintiff filed a [c]omplaint against Sakura Amoan Anning Yoshihara and EAN Holdings LLC for damages Plaintiff suffered stemming from a February 13, 2016 motor vehicle collision (16 CVS 3853 - Durham County, NC)" (the "Durham County Action"). (Id., ¶ 7.) Plaintiff served Defendant with a copy of the summons and complaint in that action. (Id., ¶ 8.) "On or about November 30, 2016 Plaintiff settled her claim against the defendants in the previous case. However, her damages exceeded the $30,000.00 liability policy limit amount tendered by the at-fault carrier." (Id., ¶ 9.) "On or about December 5, 2016 Plaintiff presented a[] UIM claim to Defendant. Defendant has denied Plaintiff's UIM claim." (Id., ¶ 10.) "As a result of the exhaustion of the at-fault carrier's liability

limits, as a first-class insured under Defendant's liability policy with damages that exceeded the at-fault carrier's liability limits, Plaintiff is entitled to coverage under the UIM provisions of Defendant's liability policy." (Id., ¶ 11.)

"Plaintiff's damages stemming from the February 13, 2016 motor vehicle collision which exceeded the at-fault carrier's policy limits were covered under Defendant's policy attached as Exhibit A" to the Complaint. (Id., ¶ 15.) "Under the terms of Defendant's policy attached as Exhibit A, Defendant is obligated to compensate Plaintiff for these damages." (Id., ¶ 16.) "Defendant breached the terms of the automobile insurance policy by wrongfully, and without just cause, failing and refusing to honor the UIM provision of its insurance cont[r]act by not compensating Plaintiff for her damages which exceeded the at-fault carrier's policy limits." (Id., ¶ 17.)

In addition, Defendant acted in bad faith by, inter alia:

a. Failing to act in good faith in investigating damages suffered by Plaintiff and failing to follow accepted standards within the insurance industry of dealing with such a claim;

b. Acting willfully and wantonly with the intention of causing financial injury to Plaintiff while protecting Defendant's insurance reserves;

c. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

d. Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering

substantially less than the amounts ultimately recovered in actions brought by such insured;

e. Attempting to settle a claim for less than the amount to which a reasonable person would have believed she was entitled;

f. Receiving payment of Plaintiff's insurance premium payments, but deliberately den[ying] her UIM claim and refus[ing] to pay all of her outstanding motor vehicle collision related medical bills, consider her pain and suffering, and other incurred expenses;

g. Concluding some of her treatment was unrelated to the collision despite Plaintiff producing causation documentation from a medical professional per Defendant's request; [and]

h. Unilaterally concluding some of Plaintiff's medical issues were unrelated to the collision [without requesting that] Plaintiff undergo an Independent Medical Examination to obtain contrary causation documentation from a medical professional; . . . .

(Id., ¶ 29; see also id., ¶¶ 20-26 (relying on similar allegations to assert claim for unfair and deceptive trade practices under North Carolina General Statute Section 75-1.1).)[4]

The insurance policy attached as Exhibit A to the Complaint bears the title "Florida Family Automobile Insurance Policy" (id. at 13) and contains a "Choice of Law" provision specifying that "[t]he policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Florida" (id. at 31). In the applicable UIM benefits section, the policy states

_____

4 The Complaint bases Plaintiff's unfair and deceptive acts claim in part on alleged violations of North Carolina General Statute Section 58-63-15(11) (see id., ¶ 20), which identifies certain "Unfair Claim Settlement Practices" in the insurance context, N.C. Gen. Stat. § 58-63-15(11).

that Defendant "will pay damages for bodily injury, sustained by an insured, caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured auto arising out of the ownership, maintenance or use of that auto." (Id. at 52 (emphasis omitted).)[5]  This section also contains a segment entitled "Disputes between [Defendant] and an insured" (id. at 53 (emphasis omitted)), which provides:

1. Disputes between an insured and [Defendant] as to damages may be submitted to arbitration. Arbitration must be agreed to in writing between the insured and [Defendant].
If arbitration is agreed upon, each party shall select an impartial arbitrator.  These arbitrators shall select a third one.  The cost of the arbitration and any expenses for experts shall be paid by the party who hired them.  The cost of the third arbitrator shall be paid equally by the parties.
2. If the insured and [Defendant] cannot agree to arbitrate or agree to a third arbitrator, the insured shall:
(a) Sue the owner or driver of the uninsured auto and [Defendant] in a court of competent jurisdiction.  If the owner or driver is unknown, name [Defendant] as the defendant.
(b) When suit is filed, immediately give [Defendant] copies of the suit papers.
3. If the insured agrees to settle with another insurer, the insured must submit to [Defendant] in writing by certified or registered mail a copy of the proposed settlement.
4. If within 30 days after receipt of the proposed settlement agreement, [Defendant] do[es] not

<hr>

5 Under the policy, an uninsured auto encompasses an automobile "[f]or which the total of all bodily injury liability insurance available in the event of an accident is less than the damages sustained in an accident by an insured." (Id. at 51 (emphasis omitted).)

(a) Approve the proposed settlement and the signing
of the full release[,]
(b) Waive [its] subrogation rights, and
© Agree to arbitrate the claim,
the insured shall then file suit against
[Defendant] and the person(s) legally liable.
The insured may not dismiss a defendant from such
lawsuit without [Defendant's] prior written
consent.
5. Any award against [Defendant] shall be binding and
conclusive against [Defendant] and the insured up
to [Defendant's] coverage limit.

(Id. (emphasis omitted) (formatting in original).)

## DISCUSSION

### I. Remand Motion

A defendant may remove to federal court "any civil action
brought in a State court of which the district courts of the United
States have original jurisdiction." 28 U.S.C. § 1441(a). When, as
here, diversity jurisdiction forms the basis of federal
jurisdiction (see, e.g., Docket Entry 1 at 1), complete diversity
must exist between the plaintiffs and defendants, "that is, no
plaintiff may be a citizen of the same state as any defendant,"
Elliott v. American States Ins. Co., 883 F.3d 384, 394 (4th Cir.
2018). Plaintiff disputes the existence of complete diversity.
(See generally Docket Entry 14.)[6]  In other words, notwithstanding
the Complaint's allegations of complete diversity (see Docket Entry

_____

6  Plaintiff does not, however, challenge the timeliness of
removal or the existence of the requisite amount in controversy.
(See generally Docket Entry 14; see also Docket Entry 1 at 1-3
(explaining that Defendant filed its notice of removal within 30
days of Complaint's service and that Complaint seeks more than
$75,000 in damages, as 28 U.S.C. §§ 1446 and 1332 require).)

4, ¶¶ 1-2 (asserting that Plaintiff possesses North Carolina citizenship and Defendant possesses Maryland citizenship)), Plaintiff now contends that Plaintiff and Defendant "are all citizens of North Carolina for purposes of 28 U.S.C. §§ 1332 and 1441," rendering removal improper (Docket Entry 14, ¶ 15).

More specifically, Plaintiff asserts that "this is a direct action against" an insurer under an insurance policy "in which the insured . . . is not a party-defendant," such that, pursuant to 28 U.S.C. § 1332(c)(1)(A), Defendant "is deemed to be a citizen of the same state as the insured, [Plaintiff]." (Id., ¶ 14.) As relevant here, the statute in question provides that

> a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of —
>
> > (A) every State and foreign state of which the insured is a citizen; . . . .

28 U.S.C. § 1332(c)(1)(A). Plaintiff argues that this lawsuit qualifies as a "direct action" under this provision. (See, e.g., Docket Entry 14, ¶¶ 14-15.) As the United States Court of Appeals for the Fourth Circuit recently explained, however, "a 'direct action' under § 1332(c)(1) refers to 'a tort claim in which the insurer essentially stands in the shoes of its legally responsible insured'" and "does not include an insured's suit against his or

her own insurer for breach of the terms of the insurance policy or the insurer's own alleged tortious conduct." Elliott, 883 F.3d at 395.

"[Plaintiff] brought this action as an insured person against [Defendant], her insurance company, alleging[, inter alia, breach of the insurance policy and] an unfair or deceptive practice in the settling of insurance claims in violation of state law," Elliott, 883 F.3d at 395.  (See generally Docket Entry 4.)  "This is not a direct action within the meaning of § 1332(c)(1) and, therefore, § 1332(c)(1)'s residency determination for direct action suits does not apply."  Elliott, 883 F.3d at 395.  Per the Complaint (see Docket Entry 4, ¶¶ 1-2), Plaintiff "is a North Carolina resident and [Defendant] is a corporation organized under the laws of the State of [Maryland] with its principal place of business in [Maryland], thus satisfying § 1332(a)(1)'s complete diversity requirement," Elliott, 883 F.3d at 395.  As complete diversity exists, Plaintiff's challenge to Defendant's removal of this action fails.

Accordingly, the Court will deny Plaintiff's Remand Motion.

## II. Dismissal Motion

Next, Defendant seeks Rule 12(b)(6) dismissal of Plaintiff's Complaint on the grounds that it "fails to state a claim upon which relief can be granted pursuant to the contract at issue in this matter and attached to Plaintiff's Complaint as Exhibit 1-2."

(Docket Entry 8 at 1.)  In particular, Defendant maintains that "Plaintiff's claims are subject to dismissal pursuant to Rule 12(b)(6) because (1) Plaintiff has failed to satisfy various policy conditions which are prerequisite to a viable claim for UIM benefits and (2) Plaintiff is not legally entitled to recover damages from the underinsured tortfeasor(s)."  (Docket Entry 9 at 1; see also Docket Entry 18 at 1 (explaining that Defendant's Dismissal Motion rests on two bases:  "(1) Plaintiff failed to satisfy various policy conditions which are prerequisite to a viable claim for UIM benefits and (2) Plaintiff is not legally entitled to recover damages from the underinsured tortfeasor(s) because the underlying claim is time-barred").)  Under governing law, Defendant's dismissal arguments fall short.

### A. Rule 12(b)(6) Standards

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct.  Id.  Nevertheless, the complaint need not contain detailed factual recitations, as long as it provides the defendant "fair notice of what the claim is and the

grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).

In reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub nom., Coleman v. Court of App. of Md., 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

In ruling on a 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont, 637 F.3d at 448. The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Generally, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment," an action from which courts should refrain "where the

11

parties have not had an opportunity for reasonable discovery."

E.I. du Pont, 637 F.3d at 448.  However, in reviewing 12(b)(6)

motions, courts "may properly take judicial notice of matters of

public record."  Philips, 572 F.3d at 180.

Notably, a Rule 12(b)(6) motion "tests the sufficiency of a

complaint," but "does not resolve contests surrounding the facts,

the merits of a claim, or the applicability of defenses."

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.

1992).  Accordingly, a Rule 12(b)(6) motion "generally cannot reach

the merits of an affirmative defense," Goodman v. Praxair, Inc.,

494 F.3d 458, 464 (4th Cir. 2007), except "in the relatively rare

circumstances where facts sufficient to rule on an affirmative

defense are alleged in the complaint," id.[7]  "This principle only

applies, however, if all facts necessary to the affirmative defense

'clearly appear[] *on the face of the complaint*.'"  Id. (brackets

and emphasis in original) (quoting Richmond, Fredericksburg &

Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).  In

_____

        7    "An affirmative defense is the defendant's assertion
raising new facts and arguments that, if true, will defeat the
plaintiff's . . . claim, even if all allegations in the complaint
are true.    Generally speaking, affirmative defenses share the
common characteristic of a bar to the right of recovery even if the
general complaint were more or less admitted to."  Emergency One,
Inc. v. American Fire Eagle Engine Co., 332 F.3d 264, 271 (4th Cir.
2003) (internal quotation marks, brackets, and citation omitted);
accord State Farm Mut. Auto. Ins. Co. v. Curran, 135 So. 3d 1071,
1079 (Fla. 2014) ("An affirmative defense is a defense which admits
the cause of action, but avoids liability, in whole or in part, by
alleging an excuse, justification, or other matter negating or
limiting liability." (internal quotation marks omitted)).

other words, absent clear appearance on the face of the complaint, such "defenses are more properly reserved for consideration on a motion for summary judgment." Richmond, Fredericksburg & Potomac, 4 F.3d at 250; see also Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002) (explaining that "claims lacking merit may be dealt with through summary judgment under Rule 56" rather than under Rule 12(b)(6)).

## B.  Relevant Law

As a federal court sitting in diversity, the Court "must apply the substantive law of the forum state in resolving the parties' dispute, including the forum state's choice-of-law rules." Wheels Sports Grp., Inc. v. Solar Commc'ns, Inc., 194 F.R.D. 527, 534 (M.D.N.C. 1999); see also ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 49 n.11 (4th Cir. 1983) ("Federal courts, when exercising their diversity or pendent jurisdiction over state law claims, must of course, apply the choice of law rules applicable in the forum state."), adhered to on reh'g, 742 F.2d 170 (4th Cir. 1984).  The insurance policy at issue here contains a Florida "Choice of Law" provision.  (Docket Entry 4 at 31; see also id. ("Any terms of this policy in conflict with the statutes of Florida are amended to conform to those statutes.").)[8]  North Carolina "typically give[s] effect to contractual choice-of-law provisions." Volvo Constr.

_____

8   The policy further reflects a Florida address for the insured and a Florida location for the insured automobiles.  (Id. at 11.)

Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 600-01
(4th Cir. 2004).  Moreover, although the parties generally treat
Plaintiff's claims as arising under North Carolina law (see Docket
Entries 9, 18, 22), they neither argue that the choice-of-law
provision lacks validity nor identify any reason for disregarding
North Carolina's typical adherence to choice-of-law provisions (see
Docket Entries 8, 9, 18, 22).  Accordingly, Florida law governs
Plaintiff's breach of contract claim.[9]

"[I]nsurers issuing motor vehicle policies in Florida are
mandated by statute to offer [UIM] coverage unless the insured has
expressly rejected the coverage."  State Farm Mut. Auto. Ins. Co.
v. Curran, 135 So. 3d 1071, 1076 (Fla. 2014).  According to the
Florida Supreme Court:

> [UIM] coverage is intended to protect persons who are
> legally entitled to recover damages for injuries caused
> by owners or operators of uninsured or underinsured motor
> vehicles.  In addition, [the Florida Supreme Court] ha[s]
> stressed that the statute is not designed "for the
> benefit of insurance companies or motorists who cause
> damage to others."   Indeed, [the UIM statute] was
> intended to place the injured party in the same position
> as he or she would have been had the tortfeasor been
> insured.

---

9    Because North Carolina General Statute Section 75-1.1
imposes liability "ex delicto, not ex contractu," ITCO Corp., 722
F.2d at 49 n.11, and the Complaint alleges that "[t]he events at
issue in this lawsuit took place in Durham County, North Carolina"
(Docket Entry 4, ¶ 4), it appears that "North Carolina's law on
unfair trade practices . . . would apply" to Plaintiff's remaining
claims, ITCO Corp., 722 F.2d at 49 n.11.

Id. at 1076-77 (citations omitted); accord id. at 1080 (Lewis, J.,
concurring).  Further, "[a]s a creature of statute rather than a
matter for contemplation of the parties in creating insurance
policies, the [UIM] protection is not susceptible to the attempts
of the insurer to limit or negate that protection."  Salas v.
Liberty Mut. Fire Ins. Co., 272 So. 2d 1, 5 (Fla. 1972).

Florida's UIM statute provides in relevant part:

> No motor vehicle liability insurance policy which
> provides bodily injury liability coverage shall be
> delivered or issued for delivery in this state with
> respect to any specifically insured or identified motor
> vehicle registered or principally garaged in this state
> unless uninsured motor vehicle coverage is provided
> therein or supplemental thereto for the protection of
> persons insured thereunder who are legally entitled to
> recover damages from owners or operators of uninsured
> motor vehicles because of bodily injury, sickness, or
> disease, including death, resulting therefrom.

Fla. Stat. § 627.727(1).  Florida courts "construe the [statutory]
words 'legally entitled to recover . . . damages' to mean simply
that the insured must be able to establish fault on the part of the
uninsured motorist which gives rise to the damages and to prove the
extent of those damages."  Allstate Ins. Co. v. Boynton, 486 So. 2d
552, 556 (Fla. 1986) (internal quotation marks omitted); see also
id. ("This would mean in a direct action against the insurer the
insured has the burden of proving that the other motorist was
uninsured, that the other motorist is legally liable for damage to
the insured, and the amount of this liability." (internal quotation
marks omitted)).

In assessing legal entitlement, Florida law focuses on whether the insured "had the legal right to recover damages from the tort-feasor at the time of the accident." Jones v. Integral Ins. Co., 631 So. 2d 1132, 1134 (Fla. Dist. Ct. App. 1994). Thus, in defending against a UIM claim, an "insurer has available all substantive defenses the tortfeasor could have raised." Boynton, 486 So. 2d at 556. Notably, though, "a procedural defense such as a statute of limitations is not necessarily also available." Id. at 558.[10]

Moreover, "[b]ecause the [UIM] statute 'was enacted to provide relief to innocent persons who are injured through the negligence of an uninsured motorist[,] it is not to be 'whittled away' by exclusions and exceptions." Young v. Progressive Se. Ins. Co., 753 So. 2d 80, 83 (Fla. 2000). Thus, "provisions in [UIM] policies that provide less coverage than required by the statute are void as contrary to public policy." Id. That principle voids provisions "requiring an insured to sue a tortfeasor to obtain [UIM] coverage." Saris v. State Farm Mut. Auto. Ins. Co., 49 So. 3d 815, 819 (Fla. Dist. Ct. App. 2010) (finding that such provision "is, in effect, no less burdensome than requiring the insured to recover a judgment or settlement against the tortfeasor before obtaining

---

10   Indeed, Florida courts have held that the expiration of the statute of limitations against the tortfeasor provides no defense to the insurer in a suit for UIM benefits.  See Jones, 631 So. 2d at 1134; see also Saris v. State Farm Mut. Auto. Ins. Co., 49 So. 3d 815, 816, 819 (Fla. Dist. Ct. App. 2010).

coverage," and explaining that "[b]oth such requirements violate public policy").  In addition, an insurer bears the burden of pleading and proving prejudice when it asserts that an insured's noncompliance with a post-accident insurance policy obligation (i.e., a "condition subsequent")[11] relieves the insurer of UIM liability.  See Curran, 135 So. 3d at 1078-79.

### C. Analysis

### i. Breach of Contract Claim

Defendant seeks Rule 12(b)(6) dismissal of Plaintiff's breach of contract claim on the ground that "Plaintiff has failed to satisfy various policy conditions which are prerequisite to a viable claim for UIM benefits."  (Docket Entry 9 at 1.)  In particular, Defendant faults Plaintiff for failing to sue "Defendant *and the person(s) legally liable*" (id. at 6 (emphasis in original)), as the policy requires (see id. at 5-6).  However,

---

11  Florida law defines the terms "condition subsequent" and "condition precedent" as follows:

"A condition precedent is one that is to be performed before the contract becomes effective.  Conditions subsequent are those that pertain not to the attachment of the risk and the inception of the policy but to the contract of insurance after the risk has attached and during the existence thereof.  A condition subsequent presupposes an absolute obligation under the policy and provides that the policy will become void, or its operation defeated or suspended, or the insurer relieved wholly or partially from liability, upon the happening of some event or the doing or omission of some act."

Curran, 135 So. 3d at 1078 (quoting 31 Fla. Jur.2d Insurance § 2686 (2013)).

under Florida law, any provision "requiring an insured to sue a tortfeasor to obtain [UIM] coverage . . . . violate[s] public policy," rendering it void. _Saris_, 49 So. 3d at 819. Accordingly, Plaintiff's failure to join "Sakura Amoan Anning Yoshihara and EAN Holdings LLC" (Docket Entry 4, ¶ 7) as defendants in this lawsuit (_see, e.g._, _id._, ¶¶ 1-2 (identifying parties)) cannot justify Rule 12(b)(6) dismissal. _See Saris_, 49 So. 3d at 819; _see also id._ at 816 ("The [lower] court found that the insured was not entitled to [UIM] coverage because the insured failed to comply with a policy provision requiring the insured to sue the owner or driver of the uninsured motor vehicle. We find that the policy provision is void against the public policy of the [UIM] statute, section 627.727(1), Florida Statutes (2007). Therefore, we reverse.").

Defendant also asserts in passing that:

> [t]he Complaint is silent as to whether Plaintiff complied with the terms set forth in the Policy, including whether she provided Defendant with a copy of the proposed settlement or made any demand for arbitration. The Complaint is also silent as to whether liability was ever determined as to Sakura Amoan Anning Yoshihara and EAN Holdings LLC.

(Docket Entry 9 at 6; _see also id._ at 4 ("Notably absent from the Complaint are any allegations regarding compliance with the terms of the Policy or any final determination that Plaintiff was legally entitled to recover from Sakura Amoan Anning Yoshihara or EAN Holdings LLC.").) To the extent that Defendant seeks Rule 12(b)(6) dismissal on these grounds (_but see id._ at 6 (arguing that,

"[r]egardless of this absence," Plaintiff failed to comply with requirement to sue tortfeasor, justifying dismissal)), these arguments fail.

First, the policy does not require arbitration. (See Docket Entry 4 at 53 ("Disputes between an insured and [Defendant] may be submitted to arbitration." (emphasis omitted) (emphasis added)); accord Docket Entry 9 at 5.) Thus, the mere absence of allegations regarding arbitration does not impact the validity of Plaintiff's UIM claim. Further, under Florida law, an insured need not establish a tortfeasor's liability prior to initiating suit against her insurer. See Saris, 49 So. 3d at 819 (observing that "requiring the insured to recover a judgment or settlement against the tortfeasor before obtaining [UIM] coverage. . . . violate[s] public policy"); see also Boynton, 486 So. 2d at 556 (explaining that UIM statute's "'legally entitled to recover . . . damages'" requirement "mean[s] simply that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages," which, in turn, "mean[s] in a direct action against the insurer the insured has the burden of proving that the other motorist was uninsured, that the other motorist is legally liable for damage to the insured, and the amount of this liability" (internal quotation marks omitted)). Finally, the policy requirement that the insured "submit to [Defendant] in writing by certified or registered mail

a copy of [a] proposed settlement" with another insurer (Docket Entry 4 at 53) qualifies as a condition subsequent under Florida law. See Curran, 135 So. 3d at 1078. Accordingly, Defendant would need to plead and prove prejudice arising from any alleged failure to comply with this policy provision. See id. at 1078-79.[12] Because the Complaint's allegations do not establish such prejudice (see generally Docket Entry 4), any such "defense[ is] more properly reserved for consideration on a motion for summary judgment," Richmond, Fredericksburg & Potomac, 4 F.3d at 250.

In short, Defendant's arguments regarding Plaintiff's breach of contract claim lack merit. As such, the Court should deny Defendant's request to dismiss this claim.

### ii. Remaining Claims

Defendant additionally moves to dismiss Plaintiff's "unfair and deceptive acts and practices" and "bad faith" claims (Docket Entry 9 at 8) on the ground that "Plaintiff's claims against the underinsured defendants in the Durham County Action are now time-barred" (id. at 10). In support of this argument, Defendant notes that, under North Carolina law, "a UIM carrier's liability is derivative of the tortfeasor's liability and is not determined until the tortfeasor's liability for damages has been determined."

---

12 In her opposition to the Dismissal Motion, Plaintiff cites to evidence in support of the Remand Motion suggesting compliance with the relevant policy provision. (See Docket Entry 22 at 2-3.) However, the Court cannot consider such materials when ruling on a Rule 12(b)(6) motion. See E.I. du Pont, 637 F.3d at 448.

(Id. at 8.)  As such, Defendant maintains that, in the absence of a judgment against the tortfeasor (see id. at 8-11), Defendant could not have acted in bad faith or contrary to North Carolina General Statute Section 58-63-15(11)[13] "by refusing to pay Plaintiff's UIM claim and compelling [P]laintiff to institute litigation" (id. at 8).[14]  Finally, Defendant emphasizes, "[b]y filing suit against Defendant and without filing suit against the tortfeasors, Plaintiff's claims against the underinsured defendants in the Durham County Action are now time-barred under the three year statute of limitations."  (Id. at 10.)

As discussed above, Florida law governs Plaintiff's UIM claim. (See Docket Entry 4 at 31.)  Florida imposes no obligation on an insured to secure a judgment against a tortfeasor before obtaining UIM benefits from her insurer.  See Boynton, 486 So. 2d at 556-57; Saris, 49 So. 3d at 819.  Nor does the running of the statute of limitations against a tortfeasor impede a (timely) UIM suit against an insurer under Florida law.  See Saris, 49 So. 3d at 816, 819; Jones, 631 So. 2d at 1134.  Accordingly, neither Defendant's

_____

    13    Defendant mistakenly refers to this statute as North Carolina General Statute Section "58-63-1(11)" (Docket Entry 9 at 8-9; Docket Entry 18 at 3), but the relevant statute bears the number "58-63-15(11)" (Docket Entry 4, ¶ 20).

    14    Defendant does not address Plaintiff's other allegations of wrongdoing (see Docket Entry 9 at 8-11), including the alleged failure to investigate in good faith and the allegedly improper denial of certain medical expenses as unrelated to the collision (see Docket Entry 4, ¶¶ 20-22, 29).

(North-Carolina-based) UIM-related contentions nor its contractual arguments justify Rule 12(b)(6) dismissal of Plaintiff's tort claims.

## CONCLUSION

Plaintiff failed to establish a lack of diversity, rendering remand improper. Defendant similarly failed to justify Rule 12(b)(6) dismissal under the applicable law.

**IT IS THEREFORE ORDERED** that the Remand Motion (Docket Entry 14) is **DENIED.**

**IT IS RECOMMENDED** that the Dismissal Motion (Docket Entry 8) be denied.

This 14th day of November, 2019.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
